United States District Court
For The District of Columbia

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Brent John Holdridge,<br><br>Defendant. | Case No. 21-cr-729 (RBW) |

## Motion to Terminate Probation as an Illegal Sentence

Brent John Holdridge, through undersigned counsel, moves to terminate his probation as unlawful in light of *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023). *Little* makes clear that this Court was never allowed to impose dual punishments, incarceration and probation, for a single petty offense. Yet, Mr. Holdridge received both. Now that he has fully served his prison term—one of the prescribed alternatives under the statute of his conviction—his probation should be terminated because he cannot twice be punished for the same offense. *See Ex Parte Lange*, 85 U.S. 163 (1873); *In Re Bradley*, 318 U.S. 50 (1943). Under 18 U.S.C. § 3564(c), the Court has the authority to do so forthwith.

**I.   Background**

In December 2021, Mr. Holdridge was charged by information with four counts related to his activities at the U.S. Capitol on January 6, 2021. *See* Information, ECF No. 7 (Dec. 23, 2021); Superseding Information, ECF No. 25 (Mar. 10, 2022). In August 2022, he pled guilty to a single petty offense (Count 4 of the Superseding Information) of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Plea Ag't, ECF No. 45 (Aug. 4, 2022); Min. Entry (Aug. 4, 2022).

1

The government requested a sentence of 60 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.  *See* Gov't Sent'g Mem., ECF No. 59 (Nov. 14, 2022).  Mr. Holdridge requested 36 months of probation and $500 in restitution.  *See* Def. Sent'g Mem., ECF No. 60 (Nov. 15, 2022).

On January 9, 2023, this Court sentenced Mr. Holdridge to 60 days of incarceration, three years of probation, and $500 in restitution.  *See* Judgment, ECF No. 69 (Jan. 10, 2023).  Mr. Holdridge is currently on probation after fully serving 60 days of imprisonment.  On April 17, 2024, the Probation Office filed a petition alleging four violations of probation.  *See* ECF No. 71.  The violations stem from Mr. Holdridge's longstanding battle with drug addiction and have nothing to do with January 6 or the petty offense for which he is on probation.

Mr. Holdridge lives in California. On May 1, 2024, Mr. Holdridge failed to appear to a video-teleconference hearing the Court had set. Upon information and belief, Mr. Holdridge did not have access to a phone or computer at that time. In any event, a warrant was issued. He was picked up on the warrant on May 22 and transported to Washington, D.C. He has been in custody for over a month for the violations alleged in the petition.

**II.    Argument**

This Court was never allowed to impose dual punishments for a single petty offense. Having been sentenced to, and fully served, imprisonment, the probation Mr. Holdridge is on is unlawful, as it was simply not punishment that was statutorily permitted in conjunction with imprisonment.  Continuing his probation subjects him to continuing double jeopardy.  His probationary term should thus be terminated in the interests of justice.

The defendant in *Little* was also sentenced to two separate forms of punishment for a single offense—imprisonment and probation.  *See Little*, 78 F.4th at 454, 461.  In overturning his

2

overall sentence as unlawful on appeal, the D.C. Circuit explained that "[p]robation and imprisonment are alternative sentences that cannot generally be combined," so that "the district court could not"—as was done here—"impose both for Little's petty offense." *Id.* at 454. Specifically holding that "a defendant may not get probation and imprisonment for a single petty offense," the Court made clear that the available sentences were "(1) probation, (2) a fine, (3) imprisonment, (4) probation and a fine, *or* (5) imprisonment and a fine." *Id.* at 456, 458 (emphasis added). And, as the D.C. Circuit underscored, this statutory scheme means that "[o]nce a petty offender is done with imprisonment he may move on with his life," with no further post-confinement monitoring. *Id.* at 459 (citing 18 U.S.C. § 3583(b)(3)).

Because imprisonment and probation were alternative punishments, one of which Mr. Holdridge has completed, binding Supreme Court precedent in *Lange* and *Bradley* makes clear that continuing Mr. Holdridge on probation punishes him twice for the same offense. But "[n]o one can be twice punished for the same crime or misdemeanor[.]" *Lange*, 85 U.S. at 169. Indeed, "we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Id.* at 173.

Once Mr. Holdridge completed his imprisonment, the Double Jeopardy Clause "then interposed its shield, and forbid that he should be punished again for that offence" with probation. *Id.* at 176. Put another way, "when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." *Id.* "Since one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint." *Bradley*, 318 U.S. at 52.

The Supreme Court reaffirmed *Lange* and *Bradley* in *Jones v. Thomas,* 491 U.S. 376 (1989) (though declining to extend them to cases with multiple offenses), explaining that, like here, "*Bradley* and *Lange* both involved alternative punishments that were prescribed by the legislature for a single criminal act" *id*. at 384, which were "true alternative sentences case[s]" because the legislature had clearly intended that either punishment—but not both—would suffice for the "gravity of the offense at issue there." *Id.* at 384–85.  Same too here: *either* imprisonment *or* probation was lawful, but not both, and with one fully served, the power of the court to punish further is gone.

The facts of *Lange* and *Bradley*, moreover, underscore their direct application to Mr. Holdridge's situation today.  Similar to the sequence in Mr. Holdridge's case, the defendant in *Lange*, 85 U.S. 163, was convicted a single offense—stealing mailbags from the Post Office—under a statute that carried punishment of *either* imprisonment for up to one year *or* a fine of up to $200.  The trial court, erroneously, imposed *both* punishments, and after the defendant had paid his fine and spent five days in prison, the court attempted to correct its error by entering an order resentencing him to one year in prison.  The Supreme Court, however, held that because the defendant had "fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence," the court's "power to punish for that offence was at an end." *Id.* at 176.  Because the court's second order violated the Double Jeopardy Clause, the Supreme Court ordered that the petitioner be freed.  *Id.* at 178.

Similarly, in *Bradley*, 318 U.S. 50, a petitioner was found guilty of contempt and sentenced to six months in prison and a $500 fine.  He began serving his prison sentence, and his attorney paid the fine three days later.  The court subsequently realized that the relevant statute permitted imprisonment or fine, but not both, and it issued a new order amending the sentence to

4

omit the fine but retain the imprisonment term, with instructions to return the fine to the petitioner.  The Supreme Court held the court's new order to be "a nullity." *Id.* at 52.  "As the judgment of the court was thus executed so as to be a full satisfaction of one of the two alternative penalties of the law, the power of the court was at an end." *Id.*

*Lange* and *Bradley* resolve the motion here.  The power of this Court to continue its supervision of Mr. Holdridge through the previously-imposed punishment of probation ended after Mr. Holdridge fully served the separate punishment of imprisonment.  Mr. Holdridge has already served more than a year of this unlawful probation, and the interests of justice support the termination of the remainder of his term of probation now.

Finally, given that any alleged violations occurred during an illegal term of probation, the alleged violations are a nullity and have no bearing on whether this motion should be granted.  Simply put, Mr. Holdridge's probation should be terminated because it is unlawful and a double punishment that violates the Double Jeopardy Clause.  Indeed, the Supreme Court's binding interpretation of the Double Jeopardy Clause in *Lange* and *Bradley* prevents this Court from imposing any additional punishment for any alleged violations because Mr. Holdridge has already served his 60-day prison term in full.  Any punishment beyond that term of imprisonment—including additional prison time following revocation of probation—constitutes unlawful "multiple punishment" exceeding the bounds "authorized by the legislature." *United States v. Fogel*, 829 F.2d 77 (D.C. Cir. 1987).

### III.   Conclusion

After Mr. Holdridge completed his imprisonment term, the power of this Court to continue to punish him for his offense of conviction was at an end.  Under 18 U.S.C. § 3564(c), therefore, the interests of justice require that his probation be terminated forthwith.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
ELIZABETH MULLIN
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500